No. 22-80100

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

IN RE: FACEBOOK SIMULATED
CASINO-STYLE GAMES LITIGATION

---

On Petition for Permission to Appeal from an Order of the
United States District Court for the Northern District of California
Case No. 5:21-CV-02777 | The Honorable Edward J. Davila

---

## MOTION BY META PLATFORMS, INC. FOR LEAVE TO FILE
## REPLY IN SUPPORT OF PETITION FOR PERMISSION
## TO APPEAL UNDER 28 U.S.C. § 1292(b)

---

Behnam Dayanim
PAUL HASTINGS LLP
2050 M Street, NW
Washington, DC 20036
Telephone: (202) 551-1700

Sean D. Unger
PAUL HASTINGS LLP
101 California Street
San Francisco, CA 94111
Telephone: (415) 856-7000

Christopher Chorba
Timothy Loose
Patrick J. Fuster
Adrienne M. Liu
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000

---

*Attorneys for Petitioner Meta Platforms, Inc.*

Petitioner Meta Platforms, Inc. respectfully requests leave to file a reply in support of its petition for permission to appeal under 28 U.S.C. § 1292(b). Dkt. 1-2.

This Court regularly grants motions for leave to file reply briefs in support of § 1292(b) petitions. *See, e.g.*, *Cinnamon Mills v. Target Corp.*, No. 21-80111, Dkt. 11 (9th Cir. Dec. 6, 2021); *West Coast Stock Transfer, Inc. v. Terra Tech Corp.*, No. 19-80022, Dkt. 9 (9th Cir. May 31, 2019); *Swinomish Indian Tribal Community v. BNSF Ry. Co.*, No. 18-80062, Dkt. 11 (9th Cir. Aug. 21, 2018). Although neither the Federal Rules of Appellate Procedure nor this Court's rules expressly address the filing of a reply in support of a § 1292(b) petition, the Federal Rules of Appellate Procedure generally give the party seeking relief an opportunity to file a reply. *See* Fed. R. App. P. 27(a)(4) (authorizing a reply to a response to a motion); Fed. R. App. P. 28(c) (authorizing appellant to file reply brief).

Meta's proposed reply complies with the length and timing requirements in Federal Rule of Appellate Procedure 27(a)(4) and (d)(2) and Circuit Rules 27-1(1)(d) and 32-3 for reply briefs in support of motions, as it does not exceed 2,800 words and is being filed within seven days of the filing of the answer to the petition. Dkt. 6. The Court will

benefit from the proposed reply because it clarifies the issues presented, rebuts arguments raised in the answer, and corrects the record. Counsel for Meta has conferred with counsel for Plaintiffs. Plaintiffs do not oppose this motion.

Meta therefore respectfully requests that the Court grant this motion and consider the attached reply in deciding the petition.

Dated: September 29, 2022         GIBSON, DUNN & CRUTCHER LLP

By: _____ /s/ Christopher Chorba _____

*Counsel for Petitioner*
*Meta Platforms, Inc.*

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................... 1

ARGUMENT ............................................................................ 4

    I.    This Court Should Grant Meta's § 1292(b) Petition .............. 4

        A.    Section 230 Presents a Controlling Question of Law ................................................................................. 4

        B.    Reasonable Jurists Could Conclude That Section 230 Protects an Online Service When It Facilitates Access to Third-Party Content for a Fee ................................................................................. 6

        C.    An Interlocutory Appeal Would Materially Advance the Termination of This Case ........................ 11

    II.    Plaintiffs' Proposed Cross-Appeal Is Foreclosed by Circuit Precedent .................................................................. 13

CONCLUSION ........................................................................ 15

CERTIFICATE OF COMPLIANCE ........................................ 16

# TABLE OF AUTHORITIES

<u>Page(s)</u>

**Cases**

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119 (9th Cir. 2003)...................................................................9

*In re Cement Antitrust Litig.*,
    673 F.2d 1020 (9th Cir. 1981)...............................................................11

*Coffee v. Google, LLC*,
    2022 WL 94986 (N.D. Cal. Jan. 10, 2022)...........................................10

*Dent v. Nat'l Football League*,
    968 F.3d 1126 (9th Cir. 2020)...............................................................14

*Dyroff v. Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019)..........................................................6, 14

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008)..................................................................3

*Gonzalez v. Google, Inc.*,
    335 F. Supp. 3d 1156 (N.D. Cal. 2018)................................................14

*Gonzalez v. Google LLC*,
    2 F.4th 871 (9th Cir. 2021) ...........................................................2, 8, 14

*HomeAway.com, Inc. v. City of Santa Monica*,
    918 F.3d 676 (9th Cir. 2019)......................................................2, 7, 10

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
    22 F.4th 1125 (9th Cir. 2022) ...............................................................11

*Kater v. Churchill Downs Inc.*,
    886 F.3d 784 (9th Cir. 2018)...................................................................9

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016).......................................................10, 14

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007)..............................................................8, 9

*Reese v. BP Exploration (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011)....................................................11, 12, 13

*Rivera v. NIBCO, Inc.*,
    364 F.3d 1057 (9th Cir. 2004)..................................................................5

*Schmitt v. Kaiser Found. Health Plan of Wash.*,
    965 F.3d 945 (9th Cir. 2020).................................................................12

*Whittlestone, Inc. v. Handi-Craft Co.*,
    618 F.3d 970 (9th Cir. 2010).................................................................14

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
    516 U.S. 199 (1996)...........................................................................4, 5

**Statutes**

28 U.S.C. § 1292...................................................................................1, 11

47 U.S.C. § 230...................................................................................6, 11

**Rules**

Fed. R. App. P. 5 ......................................................................................5

## INTRODUCTION

Meta's petition for interlocutory appeal raises a legal question of paramount importance to the marketplace for online content: whether Section 230 of the Communications Decency Act bars claims against online services for hosting and processing content created and sold by third parties. The district court concluded that Section 230 did not bar Plaintiffs' attempt to hold Meta liable for allegedly illegal content created and sold by third parties within casino-themed video games hosted on Facebook. But given its doubts, the district court *sua sponte* certified its order for interlocutory appeal under 28 U.S.C. § 1292(b).

Plaintiffs oppose immediate review of this order, but their answer contains only formalistic objections and distortions of this Court's precedent. They criticize the district court for not articulating a precise "question presented" in its certification order and for not citing enough contrary authorities in its discussion of the substantial ground for difference of opinion. But what matters is that the *order* plainly satisfies the requirements of § 1292(b). Meta's defense—that Section 230 forecloses claims against online services where liability would depend on the existence or nature of content created by a third party—is a

1

controlling question of law, and there is fair ground to disagree with the district court's rejection of that defense, as confirmed by the contrary results reached by other district courts within this Circuit.

Although Plaintiffs contend that their position follows from *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676 (9th Cir. 2019), and *Gonzalez v. Google LLC*, 2 F.4th 871 (9th Cir. 2021), the district court was unsure how to read those decisions. Reasonable jurists could and should recognize that the claims in *HomeAway* and *Gonzalez* went forward despite Section 230 *only* because the liability theories targeted transactions that were alleged to be illegal regardless of any third-party content. Here, in contrast, Plaintiffs' claims turn on the nature of online content sold in casino-themed video games that third-party developers created and then chose to host on Facebook. That theory would require Meta to monitor and evaluate the nature of third-party content on Facebook before processing sales of that content.

The district court's novel exception to Section 230 for websites that process transactions for online content created and sold by third parties calls for immediate review, as the district court itself recognized. Section 230 is an "immunity statute" that should be resolved at the

2

earliest possible stage to protect defendants "not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1174-75 (9th Cir. 2008) (en banc). Yet without an interlocutory appeal, Meta will irreparably lose that immunity from suit when forced to defend itself against a litany of claims based on third-party content hosted and sold on Facebook. Notably, Plaintiffs do not dispute the centrality of this issue to the litigation or the sweeping consequences for online services that facilitate access to third-party content for a fee. And their speculation that they *might* uncover new evidence and then *might* move to amend their complaint is no reason to defer resolving whether Section 230 bars this action.

Plaintiffs also have conditionally cross-petitioned to appeal on the ground that a district court cannot grant a motion to dismiss as to invalid theories of liability, but only as to whole claims. Although Meta takes no position on whether the Court should grant Plaintiffs' cross-petition, this Court has held that district courts can dismiss invalid portions of claims, making a cross-appeal a questionable use of appellate resources. Regardless, if Meta prevails on appeal, this action would be dismissed in

its entirety, rendering moot Plaintiffs' formalistic objections to partial dismissal.

## ARGUMENT

## I.    This Court Should Grant Meta's § 1292(b) Petition

The order under review meets the jurisdictional requirements of § 1292(b), and the strong interest in resolving Section 230 at the outset of an action clearly outweighs Plaintiffs' prudential arguments for delaying review.

### A.    Section 230 Presents a Controlling Question of Law

Plaintiffs contend that this Court lacks jurisdiction because the district court did not adequately articulate a controlling question of law. Ans. at 8-10. This argument is both irrelevant to jurisdiction under § 1292(b) and wrong.

Plaintiffs' nitpicking is irrelevant because § 1292(b) requires only that the district court certify its *order* for appeal—not a particular question. *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996). A district court often will specify a question for appeal, but this Court can "'review the entire order, either to decide a question different than the one certified as controlling or to decide the case *despite the lack*

4

*of any identified controlling question.*'" *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004) (emphasis added) (quoting *Yamaha*, 516 U.S. at 205). All that matters for jurisdiction is that Meta's petition identified a controlling question of law arising from the order—specifically, whether Section 230 bars claims that seek to hold an online service liable for processing sales of virtual content if the content is the reason why the transaction is allegedly unlawful. Pet. at 8; *see* Fed. R. App. P. 5(b)(1)(B) (requiring *petitioner* to present question for review).

Plaintiffs' characterization also is wrong because the district court *did* identify a controlling question of law: "whether the Platforms are entitled to immunity for their hosting of the allegedly unlawful social casino apps." Dkt. 119 at 36. Plaintiffs assert that their claims don't impose liability for hosting the games. Ans. at 9-11. But that, of course, is the crux of this dispute. The question is whether Section 230 bars claims based on content created and sold by third parties using Meta's neutral payment-processing tools. Pet. at 8-10. Although Plaintiffs feign confusion, the district court clearly intended to certify the application of Section 230 to the "second theory of liability" regarding in-app purchases

5

of virtual currency. Dkt. 119 at 36. That controlling question of law warrants immediate appellate resolution.

### B. Reasonable Jurists Could Conclude That Section 230 Protects an Online Service When It Facilitates Access to Third-Party Content for a Fee

Section 230 protects online services when they would "face liability" for "facilitat[ing] the communication and content of others." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019). As Plaintiffs admit, their claims seek to impose liability for in-app sales of virtual currency *only* within casino-themed video games because players will likely use the purchased content to play animated slot machines. Ans. at 4. But both the virtual currency and the casino-themed video games are third-party content—"information provided by another information content provider" (namely, the app developers). 47 U.S.C. § 230(c)(1). Section 230 therefore bars claims that would hold Meta liable either for what content third parties sell within apps (virtual currency) or how third parties use such content in casino-themed video games (to play games that, despite paying out no real money, allegedly constitute gambling).

6

The district court disagreed, concluding that the processing of "*unlawful* transactions for *unlawful* gambling" could be separated from what makes the transactions for virtual currency allegedly unlawful in the first place: that third parties designed casino-themed video games that allegedly allow gambling with virtual currency. Dkt. 119 at 33. But the court *sua sponte* confessed uncertainty about how to read "the Ninth Circuit's precedent on this complicated question." *Id.* at 36.

Plaintiffs spend most of their effort insisting that this case is just a rerun of *HomeAway*. But that's obviously not true. There, the ordinance prohibited real estate transactions involving unregistered properties. 918 F.3d at 681. The ordinance did "not proscribe, mandate, or even discuss the content of the listings" by third-party property owners, which meant that the platforms would "face no liability for the content of the bookings." *Id.* at 683-84. Here, by contrast, Plaintiffs claim that Meta violated the law by processing in-app purchases of third-party online content because federal and state law "proscribe[s]" virtual currency within casino-themed video games, but not other games like Candy Crush or Madden NFL. *Id.* at 683. Their claims therefore would impose liability for the content of third-party games and the in-app purchases of

content created by others.  Apart from involving "transactions," Ans. at 17, these cases share nothing in common.

Gonzalez confirms that Meta—not Plaintiffs—has read *HomeAway* correctly.  Section 230 didn't bar claims that Google illegally shared revenue generated by ISIS's YouTube videos because this theory did "not depend on the particular content ISIS places on YouTube."  2 F.4th at 898.  Federal law prohibits giving money to designated terrorist organizations under any circumstances, which made the existence or content of the videos irrelevant to the claims.  Pet. at 20.  If Plaintiffs were right, *Gonzalez* would have announced that revenue-sharing transactions fall outside Section 230 even when the claims "depend on the particular content ISIS places on YouTube"—*i.e.*, the opposite of its actual holding.  Section 230 applies here, but not to the transactions in *HomeAway* and *Gonzalez*, because Meta's liability would turn on the nature of the content placed on Facebook by the third-party developers of casino-themed video games.

Only one of this Court's decisions has addressed claims brought against an online service for processing third-party sales of digital content—and it's not *HomeAway* or *Gonzalez*.  In *Perfect 10, Inc. v. CCBill*

*LLC*, 488 F.3d 1102 (9th Cir. 2007), this Court held that Section 230 protected an entity that processed payments for "subscriptions or memberships" to access pirated images posted online by third parties. *Id.* at 1108, 1118. *Perfect 10* makes clear that, if there is something harmful or illegal about virtual currency or casino-themed video games, Plaintiffs must bring their claims against the content developers, not the content distributors. *Id.* at 1118-19 & n.5; *accord Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123-24 (9th Cir. 2003). Plaintiffs do not cite, let alone distinguish, *Perfect 10*. In fact, they argue that they can bring claims against the third-party developers and then turn their sights on the hosting services, where the only "major difference" in the cases is "the identity of the defendants." Ans. at 3-4 (citing *Kater v. Churchill Downs Inc.*, 886 F.3d 784 (9th Cir. 2018)).

Plaintiffs argue that Meta should simply refrain from processing in-app purchases of virtual currency within casino-themed video games. Ans. at 19. But consider what a content-based duty not to process transactions would entail in this context. Meta cannot know when to withhold its payment-processing tools unless it monitors the content of every app hosted on Facebook, "reviews the content" selected for every

purchase by any user, and evaluates what every user can do or experience with the purchased content within every app. *HomeAway*, 918 F.3d at 682. This asserted duty to monitor third-party content confirms that the district court's interpretation of Section 230 has gone awry.

The order here also created an intra-circuit conflict with *Coffee v. Google, LLC*, 2022 WL 94986 (N.D. Cal. Jan. 10, 2022), which held that Section 230 protects online services when they process sales of third-party content for a fee. Judge Freeman explained that Google (also a defendant here) did "not become responsible for offending content" in apps hosted on its site just because it offered developers neutral payment-processing tools. *Id.* at *6. Plaintiffs try to distinguish *Coffee* on the theory that the plaintiffs there alleged that Google illegally facilitated gambling by processing in-app purchases of virtual currency, whereas Plaintiffs here allege that Meta illegally facilitated gambling by processing *illegal* in-app purchases of virtual currency. Ans. at 20. But there's no substantive difference between these two theories. In this Circuit, that sort of "creative pleading" cannot circumvent Section 230 protection. *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1265 (9th Cir. 2016).

Section 1292(b) does not require the "'development of contradictory precedent'" before an interlocutory appeal. *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130-31 (9th Cir. 2022). Yet the district court's order conflicts with the reasoning of *HomeAway* and *Gonzalez*, this Court's on-point decision in *Perfect 10*, and the result in *Coffee*—all of which "provides a credible basis for a difference of opinion on the issue." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (quotation marks omitted).

## C. An Interlocutory Appeal Would Materially Advance the Termination of This Case

Because the district court found that a ruling in Meta's favor would end the entire case, Dkt. 119 at 36, an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). This case also warrants review as a discretionary matter. The petition concerns a statutory prohibition that "[n]o cause of action may be brought" that, as here, holds an online service responsible for third-party content. 47 U.S.C. § 230(e)(3); *see* Pet. at 26-27. But absent a ruling from this Court, Meta will irreparably lose its immunity from suit in "protracted and expensive litigation" on Plaintiffs' claims. *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). Meanwhile, the

11

district court's interpretation could have far-reaching consequences by requiring content monitoring by all online services that facilitate access to third-party content (such as newsletters and podcasts) for a fee. Pet. at 27-28.

Plaintiffs don't dispute these points. Instead, they suggest that an interlocutory appeal could produce an advisory opinion because they might, at some unspecified point, seek to amend their complaint. Ans. at 20-22. But the possibility of amendment would not make this Court's decision advisory. A decision on Section 230 "'may' take'" the claims about in-app purchases "out of the case," *Reese*, 643 F.3d at 688, and would guide any assessment whether amendment would be futile, *e.g.*, *Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 949 (9th Cir. 2020). At any rate, amendment would be futile, as Meta argued, Dkt. 108 at 10, and as the district court evidently found in bypassing Plaintiffs' request for leave to add allegations that Meta materially contributed to the alleged illegality of casino-themed video games, Dkt. 104 at 30. In short, this issue should be taken up now.

## II.   Plaintiffs' Proposed Cross-Appeal Is Foreclosed by Circuit Precedent

Plaintiffs propose a cross-appeal so that they can argue that the district court erred in dismissing their claims insofar as they rest on theories that Meta hosted casino-themed video games or provided neutral tools for third-party developers to promote and distribute their content. Dkt. 119 at 32, 34-35. Relying on Seventh Circuit precedent, they assert that Rule 12 authorizes dismissal only of claims *in toto*—not isolated liability theories. Ans. at 24-25. Although Meta takes no position on the cross-petition, two considerations might inform how this Court allocates its appellate resources.

First, the cross-petition issue would not affect the controlling question of law presented by the petition. If Meta prevails on appeal, Section 230 would bar *every* liability theory and *every* claim, necessitating dismissal of the entire complaint. Dkt. 119 at 36. This Court can grant both Meta's petition and Plaintiffs' cross-petition, but there's no impediment—jurisdictional or prudential—to granting only Meta's petition if allowing a cross-appeal would be "a waste of judicial resources." *Reese*, 643 F.3d at 689.

13

Second, binding precedent already forecloses Plaintiffs' argument. Whatever the Seventh Circuit might say about waiting until summary judgment to trim invalid grounds for relief, *this* Circuit has held that arguments regarding "portions of the suit" are "suited for a Rule 12(b)(6) motion *or* a Rule 56 motion." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 975 (9th Cir. 2010) (emphasis added). A motion to dismiss can and should be granted as to "improperly pled" theories even when a claim can proceed under another theory. *Dent v. Nat'l Football League*, 968 F.3d 1126, 1136 (9th Cir. 2020).

District courts can use Rule 12(b)(6) to dismiss invalid portions of the complaint under Section 230 as well. In *Gonzalez*, the plaintiffs claimed that Google had provided material support to terrorists. The district court granted Google's motion to dismiss under Section 230 as to all theories of material support except for revenue-sharing. 335 F. Supp. 3d 1156, 1170-74 (N.D. Cal. 2018). This Court affirmed, holding that Section 230 barred all theories but the "revenue-sharing theory." 2 F.4th at 897-98. Other decisions similarly consider Section 230 on a theory-by-theory basis. *E.g.*, *Dyroff*, 934 F.3d at 1099-1100; *Kimzey*, 836 F.3d at 1270.

14

Given the in-circuit precedent governing this issue, Plaintiffs could not credibly have "relied upon" out-of-circuit cases—none of which they cited below—in deciding to forfeit arguments against dismissal. Ans. at 26. The district court here committed errors, but dismissing legal theories foreclosed by Section 230 was not one of them.

## CONCLUSION

Meta respectfully requests that the Court grant its petition for permission to appeal under 28 U.S.C. § 1292(b). Meta takes no position on whether Plaintiffs' cross-petition should be granted.

Dated: September 29, 2022   Respectfully submitted,

        GIBSON, DUNN & CRUTCHER LLP

        By:    /s/ Christopher Chorba

          *Counsel for Petitioner*
          *Meta Platforms, Inc.*

15

## CERTIFICATE OF COMPLIANCE

The motion complies with the word limit of Circuit Rules 27-1(1)(d) and 32-3(2) because it contains 280 words, excluding the portions exempted by Rule 32(f) of the Federal Rules of Appellate Procedure.

The reply complies with the word limit of Circuit Rules 5-2(b) and 32-3(2) because it contains 2,796 words, excluding the portions exempted by Rules 5(b)(1)(E) and 32(f) of the Federal Rules of Appellate Procedure.

The motion and reply comply with the typeface and type-style requirements of Rule 32(a)(5)(A) and (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point, New Century Schoolbook font.

Dated: September 29, 2022  Respectfully submitted,

          GIBSON, DUNN & CRUTCHER LLP

          By:  /s/ Christopher Chorba

            *Counsel for Petitioner*
            *Meta Platforms, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on September 29, 2022, I electronically filed the foregoing petition with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system, which will send a notification of that filing to all counsel of record.

Dated: September 29, 2022          Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:  _____ /s/ Christopher Chorba _____

*Counsel for Petitioner*
*Meta Platforms, Inc.*